NOT FOR PUBLICATION

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| Raveendra DESHPANDE, | : | |
| | : | |
| Plaintiff, | : | Civ. No. 10-865 |
| | : | |
| v. | : | OPINION & ORDER |
| | : | |
| TARO PHARMACEUTICALS U.S.A., | : | |
| INC., a New York corporation, | : | |
| | : | |
| Defendant. | : | |
| | : | |
| | : | |

THOMPSON, U.S.D.J.,

This matter comes before the Court upon Defendant Taro Pharmaceutical's Motion to Dismiss Plaintiff Raveendra Deshpande's Complaint pursuant to Fed. R. Civ. P. 12(b)(6) and 9(b) [docket #5] and Plaintiff's Cross-Motion to Remand pursuant to 28 U.S.C. § 1446(b) [docket # 8].  This matter has been decided on the papers without oral argument. For the reasons stated below, Defendant's Motion to Dismiss is GRANTED IN PART and DENIED IN PART, and Plaintiff's Motion to Remand is DENIED.

**I.    Background**

On August 14, 2000, Plaintiff and Defendant entered into a Consulting Agreement ("Agreement") whereby Plaintiff agreed to perform research and development work on five specified pharmaceutical products in exchange for 1) a consulting fee of $100,000 per year, and 2) continued royalty payments on any products approved by the FDA and sold by Defendant.  (Compl. Ex. A ¶¶ 2, 6-7.)  Under the terms of the Agreement, which terminated

on August 13, 2003, Plaintiff is entitled to two percent of the first one hundred million dollars of the net sales of the products and one percent of the net sales of the products in excess of one hundred million dollars but less than two million dollars; the payments are to continue for ten years after FDA approval.  (*Id.*)

In his capacity as consultant, Plaintiff developed three of the five specified products for Defendant; all of the products received FDA approval.[1]  (*Id.* ¶ 11.)  Plaintiff has received $300,000, the consulting payments for his three years of service but has received no royalty payments on any of the products.  He alleges that "[d]efendant has failed and refused, despite due demand, to produce or market, or to cause to be produced or marketed" these products.  (*Id.* 13-21.)  Plaintiff brings claims for compensatory damages, alleging breach of the implied covenant of good faith and fraudulent inducement.  Plaintiff also asks the Court to void the non-compete provision of the Agreement and to remand the case to state court. (*Id.* 22-24.)

## II.       Standard of Review and Choice of Law

In considering a 12(b)(6) motion, the Court must accept all the plaintiff's well-pleaded, non-conclusory allegations as true and construe all reasonable inferences in favor of the plaintiff.  *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-211 (3d Cir. 2009).  In order to survive a motion to dismiss, the plaintiff must "state a claim for relief that is plausible on its face."  *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009).  A claim is plausible if the plaintiff alleges enough facts for the Court to draw a reasonable inference that the defendant is liable for the misconduct alleged.  *Id*. at 1949.  "[A] complaint must do more

---

[1] The three products Plaintiff developed were promethazine suppositories (12.5 mg. and 25 mg.) and terconazole inserts (80 mg.) (Compl. ¶ 11.)

than allege the plaintiff's entitlement to relief.  A complaint has to 'show' such an

entitlement with its facts." *Fowler*, 578 F.3d at 211.  In considering a motion to dismiss, the

Court may examine the allegations of the complaint, as well as documents attached to or

specifically referenced in the complaint. *Pittsburgh v. West Penn Power Co.*, 147 F.3d 256,

259 (3d Cir. 1998).

The Agreement at issue states that it is "subject to and will be interpreted in

accordance with the laws of the State of New York."  (Compl. Ex. A ¶ 17.)  Because the

contract contains a choice of law provision, and neither party objects to its validity, the

Court will look to New York law in interpreting the terms of the contract.

**III.     Analysis**

A.     <u>Breach of Contract Claim</u>

In order to state a claim for breach of contract under New York law, a plaintiff must

allege the following: "1) the existence of an agreement, 2) adequate performance of the

contract by [p]laintiff, 3) breach of the agreement, and 4) damages." *Advanced Mktg.*

*Group, Inc. v. Business Payment Sys.*, *LLC*, 300 Fed. Appx. 48, 49 (2d Cir. 2008).  The

interpretation of an unambiguous contract can be resolved on a motion to dismiss, and the

question of whether a contract is ambiguous is a question of law.  *See Collins v. Harrison-*

*Bode*, 303 F.3d 429, 433 (2d Cir. 2002); *PaineWebber Inc. v. Bybyk*, 81 F.3d 1193, 1199 (2d

Cir.1996)).

Plaintiff alleges that Defendant breached an implied obligation to make reasonable

efforts to market and sell the products Plaintiff developed.  The Agreement gives Defendant

exclusive control over the approval process and of the marketing and sales of the products

developed by Plaintiff for ten years following FDA approval.  (Compl. Ex. A ¶ 6.)  Plaintiff

alleges that because of Defendant's exclusive control over the marketing/sale of the products, an implied covenant of good faith and fair dealing obligated Defendant to exercise "reasonable efforts and due diligence to exploit the products commercially for Plaintiff's benefit." (Compl. ¶ 16.) Plaintiff contends that Defendant has acted in bad faith in failing to market the products and is therefore liable to Plaintiff for damages. (*Id.*) The issue the Court must determine is whether, taken in the light most favorable to the Plaintiff, it is plausible that Defendant had an implied obligation to make reasonable efforts to promote the sale of the pharmaceuticals Plaintiff developed for the period during which Defendant had exclusive control.

Courts applying New York law have found an implied obligation to use reasonable efforts in exclusive licensing agreements where the only substantial compensation agreed to was the payment of royalties. *See e.g., Wood v. Lucy, Lady Duff-Gordon*, 222 N.Y. 88, 91 (1917) (holding there was an implied reasonable efforts clause in a contract that gave defendant exclusive right to place plaintiff's endorsement on fashion designs in return for one half of the profits); *Trecom Bus. Sys., Inc. v. Prasad*, 980 F.Supp. 770, 774-775 n.2 (D.N.J. 1997) (applying New York law and holding a $100 advance payment could not be considered sufficient consideration to convince the court not to impose an implied duty to act in good faith to develop and market software); *Zilg v. Prentice-Hall, Inc.*, 717 F.2d 671, 680 (2d Cir. 1983) (holding there was an implied promise to promote in an exclusive rights publishing contract where the up-front payment was only $6,500).

However, courts do not always imply a reasonable efforts obligation where the agreement provides for a substantial up-front payment or guaranteed minimum royalty payments. Arguing that New York law disfavors implied duties and citing the equitable

4

concerns of depriving a licensee of the power to determine the "the reasonableness of his marketing efforts," a district court applying New York law failed to imply a best efforts obligation where the contract, in addition to royalty payments, provided for an up-front payment of $60,000 and a consulting fee of $134,000.  *See Kardios Systems Corp. v. Perkin-Elmer Corp.*, 645 F. Supp. 506, 509 (D. Md. 1986); *see also HML Corp. v. General Foods Corp.*, 365 F.2d 77, 80-81 (3d Cir. 1966) (applying New York law and holding no implied obligation where contract provided for advance payment of $250,000).

What is clear under New York law is that despite a sizeable up-front payment, it is plausible that parties entering into an exclusive marketing/sales agreement, which contemplates the payment of substantial royalties, would expect that the party with exclusive control would take reasonable efforts to promote/sell the product.  New York courts have held that significant up-front payments do not preclude an implied reasonable efforts provision.  In *Palazzetti*, the defendant paid a $100,000 up-front fee for a license to open a Palazzetti furniture store; he was given the rights to use the Palazzetti name and was granted the exclusive right to sell Palazzetti furniture in a particular geographical location.  *Palazzetti Import/Export, Inc. v Gregory P. Morson et. al.*, 98 Civ. 722, 2001 U.S. Dist. LEXIS 20243, at *5 (S.D.N.Y. Dec. 6, 2001).  The agreement stated that defendant would pay royalties on the sale of Palazzetti items for ten years.  *Id.*  After a short period of time, however, the defendant stopped selling Palazzetti items and the plaintiff sued for lost royalties.  *Id.* at *8. After the jury awarded the plaintiff more than one million dollars in lost royalties the judge, in denying the defendant's motion for judgment as a matter of law, stated that there was sufficient evidence from which a jury could find that the parties expected the defendant to "take reasonable diligence to operate the Palazzetti store for the license period."  *Id.* at *26.

Similarly, in *New Paradigm*, a district court stated that New York law was unclear on the issue of whether up-front payments or other payments in addition to royalties precluded the implication of a good faith effort to market the product.  *New Paradigm Software Corp., v New Era of Networks, Inc. et al.*, 99 Civ. 12409, 2002 U.S. Dist. LEXIS 23753, at *51 (S.D.N.Y. Dec. 9, 2002).  The contract at issue in *New Paradigm* provided for an up-front payment of a computer program for over two million dollars along with continuing five percent royalty payments; the court held that the issue of whether there was an implied good faith effort to market the product could not be resolved on summary judgment.  *Id.*

The Court cannot hold as a matter of law that the contract in this case, which contemplates substantial royalty payments in addition to the $300,000 in consulting fees, does not contain an implied obligation to market the pharmaceutical products.  Whether there was an implied obligation and whether Defendant breached that implied obligation are factual questions that cannot be resolved on a Motion to Dismiss.

B.      Fraudulent Inducement Claim

Under Fed. R. Civ. P. 9(b), a party pleading fraud must meet a heightened pleading standard.  The rule states, "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9(b).  According to the Third Circuit, to meet the requirements under this rule, "the complaint must: (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent."  *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290 (3d Cir. 2006) (*quoting Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993)).

In pleading the requisite state of mind, Rule 9(b) relaxes the particularity requirement stating, "malice, intent, knowledge, and other condition of mind of a person may be averred generally." Fed. R. Civ. P. 9(b). However, the Third Circuit has made it clear that this does not permit conclusory allegations of fraudulent intent to be sufficient to survive a motion to dismiss. *Lerner*, 459 F.3d at 290. Instead, plaintiffs must plead facts sufficient to give rise to a "strong inference of fraudulent intent." *Id.* This can be done either by "(a) alleging facts to show that defendants had both motive and opportunity to commit fraud, or by (b) alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *Id.*

Plaintiff has not met the pleading requirements for fraud because 1) his allegations lack the specificity required by rule 9(b), and 2) he has not pled facts sufficient to give rise to a strong inference of fraudulent intent. Plaintiff alleges that Defendant told Plaintiff that he intended to develop a portfolio of suppositories and inserts, that he intended to enter into the market for said medications, and that Defendant's anticipated revenues from the sales of said medications "were reasonably predicted to exceed $100 million per year." (Compl. 19-20.) Plaintiff further alleges that these representations were false and were made in order to induce him to enter into the Agreement. (*Id.* 20.) However Plaintiff fails to specify, as required by Rule 9(b), the identity of the persons who made the statements or the time or place of any of the alleged representations. *Id.*

Moreover, Plaintiff does not plead facts sufficient to meet the strong inference of intent standard. Plaintiff puts forward no explanation as to why Defendant would pay Plaintiff a $300,000 consulting fee to develop products it had no intent to sell and then refuse to sell the products in order to deprive Plaintiff of royalty payments. The conclusory

allegation that Defendant knew the statements were false when they were made, along with the fact that Defendant has not marketed the products, are insufficient to support an inference of fraudulent intent.  Without more specific allegations explaining how Defendant would benefit from the alleged fraud, the Plaintiff has not adequately pled motive, and the Court can only infer that Defendant was representing an opinion or prediction of what it hoped or expected would occur.  For these reasons, Plaintiff's allegations are insufficient to establish an action for fraud.

      C.     <u>Motion to Void Non-Compete Clause</u>

Plaintiff argues that Defendant should be barred from enforcing the non-compete provision of the Agreement because 1) the Agreement is "overbroad and over-reaching, so as to unreasonably restrict Plaintiff from the legitimate pursuit of his professional endeavors," and 2) Defendant breached the Agreement, and therefore Plaintiff should not be held to his obligation.  (Compl. 23-24.)

Where a party breaches a contract, the breach may excuse the non-breaching party from further performance if the breach is material, and a breach is material only where it "go[es] to the root of the agreement between the parties" and "defeats the object of the parties in entering into the contract."  *New Windsor Volunteer Ambulance Corps., Inc v. Meyers*, 442 F.3d 101, 117 (2d Cir. 2006).  As already discussed, whether there was an implied promise that Plaintiff would make reasonable efforts to market the products is a factual determination that the Court cannot make at this point.  If such an implied promise existed, it could very well have gone to the root of the agreement between the parties.  Therefore, the Court cannot say as a matter of law that this was not a material breach that would excuse him from his obligations under the non-compete clause.

D.      Motion to Remand

Plaintiff argues that the case was not timely removed and should therefore be remanded.  (Pl.'s Cross-Mot. Remand 3.)  He argues the following: 1) that the one-year statute of limitations contained in 28 U.S.C. § 1446 has expired based on an earlier case filed by Plaintiff which was voluntarily dismissed, and 2) that the Notice of Removal was filed on February 25, 2010, more than thirty days after defense counsel received the Complaint on January 22, 2010.

Plaintiff did originally file an almost identical Complaint in this Court on December 31, 2008.  (Def.'s Mot. Dismiss Ex. 1.)  However, that action was dismissed voluntarily without court order and without prejudice pursuant to Fed. R. Civ. P. 41(a)(1)(A)(i).  (*Id.* Ex. 8.)  The prior action has no effect on this case for removal purposes because this is an entirely new action.  Therefore, the one-year statute of limitations period to which Plaintiff refers is not applicable.

The only relevant timing limitation is the thirty-day window imposed by 28 U.S.C. § 1446(b), which states: "The notice of removal of a civil action or proceeding shall be filed within thirty days after the receipt by the defendant…."  *Id.*  Plaintiff argues that the Notice of Removal was not filed until February 25, 2010, more than thirty days after defense counsel received the complaint on January 22, 2010.  (Pl.'s Reply Mem. Further Supp. Cross-Mot. Remand 1.)  However, the docket clearly shows that Plaintiff's counsel was served with the Notice of Removal on February 19, 2010.  (Cert. Service [docket #1].) Therefore, the action was removed within the thirty-day period required under 28 U.S.C. § 1446(b), and there is no merit to Plaintiff's claim that removal was untimely; the action will therefore not be remanded.

    E.    <u>Motion to Transfer</u>

    Defendant asks the Court to transfer the suit to the United States District Court for the Southern District of New York in the event that the Court does not dismiss all of Plaintiff's claims.  Because Plaintiff does not object, the Court will grant Defendant's Motion to Transfer.

**IV. Conclusion**

    For the foregoing reasons, and for good cause shown, IT IS, on this 13th day of May 2010;

    ORDERED that Defendant's Motion to Dismiss [docket #5] is GRANTED IN PART and DENIED IN PART; and it is further

    ORDERED that Plaintiff's Cross-Motion to Remand [docket #8] is DENIED; and it is further

    ORDERED that this suit shall be TRANSFERRED to the United States District Court for the Southern District of New York.

<u>*/s/ Anne e. Thompson*</u>

`                                       ANNE E. THOMPSON, U.S.D.J.